UNITED STATES DISTRICT COURT
SOUTHIMN DISTRICT OF NEW YORK
---------------------------------------------------------------X

UNITED STATES OF AMERICA,

       v.                                                       18 Cr. 834 (PAE)

DENARD BUTLER,

                    Defendant.

---------------------------------------------------------------X

## **DEFENDANT DENARD BUTLER'S MOTION TO MODIFY SENTENCE**

      Denard Butler, by and through counsel, respectfully moves the Court pursuant to 18 U.S.C. § 3582 (c)(1)(A) to modify Mr. Butler's term of imprisonment to time served and to impose a special condition that Mr. Butler serve a period of home confinement on supervised release. Such a modification will effectively allow him to finish the remaining portion of him prison sentence on home confinement. Home confinement in lieu of remaining in prison would achieve the medically necessary steps to protect him and fellow inmates from the spread of the novel coronavirus 2019 ("COVID-19"). By sheltering in place at his residence, in light of his serious underlying (and pre-existing) health problems that place him in the COVID-19 high-risk category, the objective of thinning the prison population so as to facilitate the ability to effectively create social distancing and by removing Mr. Butler from the petri dish conditions in prison would be achieved. Mr. Butler is medically diagnosed with a serious heart condition, bradycardia and also suffers from asthma. These conditions fall under the criteria established by the CDC that designate individuals as being at particularly high risk from COVID-19. The specter of death is a very real possibility under the circumstances.

      In support hereof, Mr. Butler's attorneys state as follows:

      1.      This Court sentenced Mr. Butler on January 30, 2020 to a term of imprisonment of sixty months, to be followed by a three-year term of supervised release. (*See* Judgment (Doc.414) at 2, 3.) Mr. Butler was sentenced in connection with his conviction 18 U.S.C. § 1962 Racketeering Conspiracy.

      2.      Mr. Butler began serving his time on January 30, 2019 at the Metropolitan Correctional Center (MCC) in New York, NY and is now at the Metropolitan Detention Center in (the "MDC") in Brooklyn, NY.

      3.      Mr. Butler's inmate register number at MDC is 86554-054. His current release date is January 2024. That release date does not take into account potential reductions in time under the First Step Act through Mr. Butler' impressive efforts at rehabilitation. (*See* Defense Sentencing Submission (Doc.410) exhibit 2.)

4. In recent weeks, COVID-19 has spread throughout the United States, infecting thousands of Americans and inflicting many with severe respiratory illness; many Americans have perished.[1]

5. On March 11, 2020, the World Health Organization described the COVID-19 outbreak as a global pandemic.[2]

6. According to the Centers for Disease Control (CDC), people who, *inter alia*, suffer from certain medical ailments, including heart conditions and asthma "are at high risk of severe illness from COVID-19."[3]

7. Mr. Butler has been diagnosed with bradycardia and asthma. Thus, Mr. Butler is in the high-risk category of individuals who face grave health consequences or death from exposure to COVID-19.

8. The MDC houses approximately 1,700 other inmates and

---

[1] *See generally* CDC: COVID-19 Situation Summary, *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html

[2] *See* WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020, *available at* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020

[3] *See* CDC: COVID-19: What if You are High Risk, *available at* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html

bathroom and shower facilities are shared by all of the inmates in each unit. As with all prison environments, inmates are held in confined spaces with others at maximum capacity for the facility, essentially on top of one another.

9. As a result, it is impossible for inmates to effectively follow the CDC's published advice that individuals socially distance themselves from other individuals at the MDC. Significantly, the close quarters in the prison does not permit inmates from separating from other inmates by at least six feet. Nor are other CDC recommendations possible, such as avoiding crowded areas, limiting close contact, frequent hand washing, and staying indoors at home.[4] Just a few days ago, March 30, 2020, a client in the MDC informed me that a whole unit (unit 52) has been quarantined due to another inmate being diagnosed (a week after first requesting medical attention) with COVID -19. Further, that client reports that people from other units are being sent to unit 52 to deliver commissary even after learning that there were people with COVID-19 there. Thus, potentially spreading the virus to other units, including the one Mr. Butler resides in while at high risk of death if infected with COVID-19.

10. Although the Bureau of Prisons (BOP) announced a plan to address the COVID-19 pandemic,[5] we submit that no action plan will be able to mitigate the effects of the virus now that it has infiltrated prison facilities. Media reports indicate that even jail officials and prosecutors are beginning to recognize that the country's prison population is at significant risk.[6]

11. Courts are beginning to recognize the risk as well. On March 18, 2020, in *United States v. Stephens*, 15-cr-95 (AJN) (S.D.N.Y. Mar. 18, 2020), Judge Alison J. Nathan granted the defendant's emergency motion for reconsideration of denial of bail and ordered the defendant released with conditions. *See id.*, Doc. 2798. Judge Nathan noted that, since the initial bail hearing, "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent" and that while "there is not yet a known outbreak among the jail and

---

[4] CDC: COVID-19: How to Protect Yourself, *available at* https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html

[5] *See* Federal Bureau of Prisons COVID-19 Action Plan, *available at* https://www.bop.gov/resources/news/20200313_covid-19.jsp

[6] *See, e.g.*, The Washington Post: *Prosecutors, defense attorneys press to release inmates, drop charges and thin jail population in response to the coronavirus* (Mar. 19, 2020) *available at* https://www.washingtonpost.com/local/legal-issues/prosecutors-press-to-release-inmates-drop-charges-and-thin-prison-population-in-response-to-the-coronavirus/2020/03/19/13005ee6-6948-11ea-b313-df458622c2cc_story.html; The New Yorker: *How Prisons and Jails Can Respond to the Coronavirus (*Mar. 14, 2020) *available at* https://www.newyorker.com/news/q-and-a/how-prisons-and-jails-can-respond-to-the-coronavirus; The New York Law Journal: *District Attorneys Call for 'Cite and Release' for Offenses That Pose No 'Physical Threat'* (Mar. 17, 2020) available at https://www.law.com/newyorklawjournal/2020/03/17/district-attorneys-call-for-cite-and-release-for-offenses-that-pose-no-physical-threat/?slreturn=20200219171303; Fox News: *U.S. Starts to release inmates due to coronavirus outbreak* (Mar. 20, 2020), *available at* https://www.foxnews.com/health/us-starts-release-inmates-coronavirus; Law360: *Boston DA To Seek Prisoner Releases During Pandemic* (Mar. 19, 2020), *available at* https://www.law360.com/articles/1255026/boston-da-to-seek-prisoner-releases-during-pandemic

prison populations, inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop." *Id.* at 2 (citing Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007)). Judge Nathan further noted that "[t]he magnitude of this risk has grown exponentially since the [prior hearing] before this Court; at the end of the day on March 6, New York State had 44 confirmed cases of COVID-19, but that by the end of the day on March 18, that number had climbed to 2,382." *Id.* at 2-3 (citations omitted). In him order, Judge Nathan also cited a recent bail determination in the Eastern District of New York, *United States v. Raihan*, 20-cr-68 (BMC) (E.D.N.Y Mar. 12, 2020), where Judge Brian M. Cogan ordered a defendant released on bail in part because "[t]he more people we crowd into [the MCC], the more we're increasing the risk to the community." *Id.*, Doc. 20 at 10. As we have advanced through the temporal landscape past the moment these Judges established prudent precedent, there have been confirmed cases of COVID-19 in the MCC and MDC.

12. Our legislators also now recognize the significant health risks that inmates face as a result of COVID-19. On March 19, 2020, U.S. Senator Kamala D. Harris wrote to the director of the BOP to note that "[e]merging research has demonstrated how dangerous coronavirus is for the elderly and those with underlying conditions and compromised immune systems." (*See* Exhibit A: Letter from Kamala D. Harris to BOP Director Michael Carvajal dated Mar. 19, 2020.) In him letter, Senator Harris observes that, rather than releasing high-risk inmates, BOP is doubling down on penal measures despite the high stakes, "responding to the threat of coronavirus with extreme measures that both maintain current levels of incarceration and penalize the incarcerated community—including by suspending social and legal visitation, suspending inmate facility transfers, and potentially locking down institutions." (*Id.* at 2.) (citing BOP COVID-19 protocols). Congresspersons Jerold Nadler and Karen Bass have separately written to Attorney General William P. Barr to note that "it is incontrovertible that, if [DOJ] does not act aggressively to address the COVID-19 threat, federal jails and prisons could quickly become epicenters of the COVID-19 pandemic." (*See* Exhibit B: Letter from Rep. Jerold Nadler and Rep. Karen Bass to Attorney General Barr dated Mar. 19, 2020 (the "Nadler/Bass Letter").)

13. COVID-19 in jails and prisons has already come to fruition. On, March 19, 2020, the NYC Department of Corrections confirmed that multiple corrections officers and a captain at the Rikers Island jail complex have tested positive.[7] Notably, in response, Mayor DeBlasio stated that "inmates with underlying health conditions could be eligible" for early release and that the City had already "identified 40 inmates who could be released, pending the approval of othim criminal justice authorities."[8]

---

[7] NY Times, *Three more corrections officers test positive, officials say* (Mar. 19, 2020) *available at* https://www.nytimes.com/2020/03/19/nyregion/coronavirus-new-york-update.html#link-615906d8

[8] *Id.*

4

14. Established general principles based on empirical evidence and accepted as fact by many leading scientists and epidemiologists support the reality that in light of his pre-existing health problems, Mr. Butler is in immediate serious risk to his health with COVID-19 cases now confirmed at the MDC. Mr. Butler's health problems cannot be treated easily inside a prison environment. If Mr. Butler becomes infected with COVID-19 he could rapidly become critically ill and will be at high risk of dying from the disease.

15. 18 U.S.C. § 3582(c)(1)(A) permits a defendant to file a motion with the Court following an adverse determination of an inmate's request that the BOP file a motion to modify the inmate's sentence, or 30 days from BOP's receipt of a request that it file such a motion. On April 1, 2020, counsel transmitted Mr. Butler's request to the warden of the MDC via email and although BOP has yet to rule on the request (and 30 days has yet to pass), in light of the time-sensitive nature of this application counsel is filing this motion now so that the Court has an opportunity to review the matter as quickly as possible. Should the Court defer ruling on this application until after the BOP's determination (and any required administrative appeals), or after 30 days from BOP's receipt of Mr. Butler' request, we respectfully request that the Court order BOP to release Mr. Butler pending a ruling on this motion.

16. Alternatively, the Court may waive the statutory exhaustion requirement imposed by Section 3582(c)(1)(A). United States v. Wilson Perez, 17-cr-513 at 3 (AT)(April 1, 2020) "Even where exhaustion is seemingly mandated by statute….the requirement is not absolute. *Washington v. Barr* , 925 F.3d 109, 118 (2nd Cir. 2019) citing *McCarthy v. Madigan*, 503 U.S. 140, 146-147 1992))[1] There are three circumstances where failure to exhaust may be excused. "First exhaustion may be unnecessary where it would be futile, either because agency decision makers are biased or because the agency has already made determined the issue." *Id.* Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id*. at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice" *Id* All of these exceptions apply here. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay; become inadequate. Finally, and obviously [Mr. Butler] could be unduly prejudiced by such delay." *Washington* 925 F. 3d at 120-21; see also *Bowen v. City of New York* 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exits where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health,…then waiver may be appropriate.") *New York v. Sullivan*, 906 F.2d 910, 918 (2nd Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even…death"). In Mr. Butler's case, every day delayed carries the risk of terminal illness.

---

[1] The Court need not decide whethim § 3582(c)'s exhaustion requirement is a jurisdictional requirement or merely a mandatory claim-processing rule. *See Monzon*, 2020 WL 550220, at *2 (describing split between courts on that question).

5

17. Under 18 U.S.C. § 3582(c)(1)(A)(i), the Court may modify a term of imprisonment upon a finding that there are "extraordinary and compelling reasons" to merit a reduction. We respectfully submit that Mr. Butler's heart condition and asthma, when combined with the unprecedented public health crisis posed by the COVID-19 pandemic, provide extraordinary and compelling reasons to modify Mr. Butler's sentence to permit him immediate release to home confinement.

18. As Representatives Nadler and Bass publicly stated on March 19, 2020: "DOJ and BOP must do all they can to release as many people as possible who are currently behind bars and at risk of getting sick." (Nadler/Bass Letter at 2.) We submit that, should BOP fail to act in this regard, this Court should swiftly step in and protect Mr. Butler' health.

19. Defense Counsel contacted the government to highlight Mr. Butler medical vulnerabilities, particularly in the context of the COVID-19 pandemic and to alert them to our intention to file this motion. As of now, it is my understanding that the government opposes the filing of this motion. However, the parties are continuing to engage in discussion in hopes of coming to some agreement as to a course of action that will safeguard Mr. Butler's health while continuing to achieve the objectives of Your Honor's sentence.

WHEREFORE, it is respectfully requested that the Court modify Mr. Butler's term of imprisonment to time served and impose a special condition that Mr. Butler serve a period of home confinement while on supervised release that will effectively allow him to finish the remaining portion of his prison sentence on home confinement, where he will be in a position to protect himself from exposure to COVID-19. Alternatively, we respectfully request the Court consider modifying Mr. Butler's term of imprisonment to home confinement until the COVID-19 pandemic has been deemed to no longer be a health crisis at which point Mr. Butler would return to BOP custody to serve the remainder of him time.

Respectfully submitted,

Dated: April 2, 2020

/s/Jacob Mitchell
Jacob Mitchell
Kenneth Paul
140 Broadway
Suite 4611
New York, NY 10005
(540) 273-3400
jacobbarclaymitchell@gmail.com

# CERTIFICATE OF SERVICE

I certify that on 2, 2020, I electronically mailed the foregoing Motion to Modify Sentence to EngelmayerNYSDChambers@nysd.uscourts.gov and thereby forwarded the document by electronic mail to:

**Jacob Edwin Warren**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2264
Email: jacob.warren@usdoj.gov

**Michael Dayton Longyear**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2223
Fax: 212-637-2443
Email: michael.longyear@usdoj.gov

**Jonathan Rebold**
U.S. Attorney's Office For The Southern District of Ne
1 Saint Andrew's Plaza
New York, NY 10007
(212)-637-2512
Email: jonathan.rebold@usdoj.gov

By:   /s/Jacob Mitchell

Jacob Mitchell

The Court has received defendant Denard Butler's motion to modify his sentence. The Court directs the Government to respond no later than 5 p.m. Monday, April 6, 2020.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

April 3, 2020